IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JASON TODD WAGNON,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

Civil No. 6:14-cv-02019-MA

OPINION AND ORDER

KATHRYN TASSINARI
MARK A. MANNING
Harder, Wells, Barton & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR  97401

    Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
JANICE E. HEBERT
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR  97204

1 - OPINION AND ORDER -

NICOLE JABAILY
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

        Attorneys for Defendant

MARSH, Judge.

Plaintiff Jason Todd Wagnon seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). For reasons that follow, I reverse the final decision of the Commissioner and remand for further proceedings consistent with this opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed an application for SSI on January 6, 2011, alleging disability beginning January 1, 2005, due to cardiovascular problems arising from a heart attack, as well as dyslexia and severe mental health problems.[1] Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ convened a hearing on October 2, 2012, but postponed the hearing to obtain additional evidence. On February 25, 2013, the ALJ conducted a second hearing, at which plaintiff appeared with his attorney and testified. A vocational expert also appeared at the hearing and testified, as did plaintiff's mother. On April 26, 2013, the ALJ issued an unfavorable decision. The Appeals

---

[1] Plaintiff also applied for Disability Insurance Benefits ("DIB"), but was denied because he had not worked long enough and did not have enough credits. Tr. 103. Plaintiff did not appeal the denial of DIB.

2 - OPINION AND ORDER -

Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for the purposes of review.

Plaintiff was born in 1960, and was 50 years old at the time of the second hearing. Plaintiff completed the ninth grade, and took GED classes in prison, but did not obtain his GED. Plaintiff had no past relevant work.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his application date. At step two, the ALJ found that plaintiff had the following severe impairments: cardiomyopathy; history of myocardial infarction with coronary artery disease and stent placement; major depressive disorder vs. schizoaffective disorder; attention deficit disorder ("ADD"); borderline intellectual functioning; post-traumatic stress disorder ("PTSD"); antisocial personality disorder; history of marijuana and methamphetamine dependence; gout; history of thoracic nerve injury; movement disorder (akathisia vs. tardis dyskinesia); and hypertension. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity ("RFC") to perform light work, except he can lift/carry up to 25 pounds occasionally, and up to 10 pounds frequently. He can perform tasks that involve about six hours of sitting, and about two hours of standing/walking in an 8-hour workday (with normal breaks). He can understand, remember, and carry out no more than simple instructions that can be learned in 30 days or less. Such tasks must involve no more than occasional changes in work setting and no more than occasional work-related decision making. He can tolerate no more than occasional interaction with co-workers and supervisors while engaging in independent work. He must avoid interaction with the public. He must also avoid exposure to workplace hazards, such as unprotected heights and dangerous machinery. He can occasionally climb stairs and ramps, but must avoid climbing ladders, ropes, or scaffolds. He can occasionally stoop.

At step four, the ALJ found the plaintiff had no past relevant work. At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as electronics worker, assembler of electronic accessories, and bench assembler. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from January 14, 2011, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to give clear and convincing reasons for rejecting plaintiff's testimony; (2) the ALJ improperly evaluated the opinion of Basil Pittenger, M.D., plaintiff's treating doctor; (3) the ALJ

improperly failed to address the opinion of plaintiff's treating psychiatric nurse practitioner Joanne Rutland; and (4) the ALJ erred at step five.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more then a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### I.   Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ

5 - OPINION AND ORDER -

must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

In his initial application materials, plaintiff stated he could not work on a full-time basis due to cardiovascular problems arising from a 2002 heart attack, as well as dyslexia and severe mental health problems. Tr. 231. He specified that he experienced "burning" chest pain with physical exertion or the stress involved with "being around people." Tr. 267.

At the hearing, plaintiff testified that he could walk about one mile before he would have to stop and rest, and that he could only sit for 15-30 minutes at a time because of lower extremity numbness. He testified that he generally became dizzy after standing upright for more than 15 minutes, and that his back hurt when he stooped over. He estimated he could lift up to 25 pounds.

Plaintiff further testified that he would have difficulty performing even sedentary work because his blood pressure medication makes him too dizzy and he has difficulty reading and writing. Plaintiff also cited difficulty maintaining concentration for more than one hour at a time.

6 - OPINION AND ORDER -

Plaintiff testified that he gets drowsy from his medications, and said he takes about a three hour nap after lunch during the daytime.

In the decision, the ALJ concluded that plaintiff's testimony concerning the intensity, persistence, and limiting effects of his limitations is not entirely credible. The ALJ cited numerous reasons which, when taken together, constitute clear and convincing reasons to reject plaintiff's testimony.

The first reason the ALJ cited was the lack of any medical records contemporaneous to the plaintiff's alleged onset date of January 1, 2005. The ALJ noted that hospital records from July 2002 documented plaintiff's acute anterior myocardial infarction, which was treated with a successful stent placement. The ALJ then noted several inconsistent statements. The ALJ noted that in the beginning of 2006, the plaintiff sought treatment from prison medical doctors for low back pain that had bothered him for "several years," but that he denied any chronic pain whatsoever as of April 2006. Also, plaintiff endorsed some symptoms of depression and anxiety, but his mental condition responded positively and at other times he reported feeling depressed "seldom" and indicated that he felt "well" overall. Most notably, the ALJ noted, plaintiff was able to maintain his daily work routine in the prison "without notable interruption."

The ALJ further noted that the beginning of his final year of a five-year prison sentence, plaintiff told his treatment providers that he "was doing well and had no concerns to report." His mood was reportedly "stable" with no evidence of psychotic symptoms or suicidal ideation. Nonetheless, plaintiff told the prison's staff psychologist that upon his release from incarceration he wanted to apply for SSI benefits. Finally, just one month prior to his release, he was reportedly exercising five days a week and walking for about one hour. An ALJ may consider inconsistencies

7 - OPINION AND ORDER -

in a claimant's testimony or between the testimony and a claimant's activities when assessing credibility. *Molina*, 674 F.3d at 1112.

The ALJ also found that plaintiff's non-compliance with medical advice to discontinue drinking alcohol and smoking tobacco undermined the credibility of his subjective complaints. An "'unexplained, or inadequately explained, failure . . . to follow a prescribed course of treatment'" is a proper reason to reject a claimant's testimony. *Molina*, 674 F.3d at 1113 (quoting *Tommasetti*, 533 F.3d at 1039). As the ALJ noted, the claimant testified in February 2013 that he generally drank a single beer per day in the previous couple of months, but that prior to that he reportedly drank between 40-80 ounces of beer per day despite his physician's recommendation that he drink no more than a single 12-ounce beer per day. Plaintiff also acknowledged that he continued to smoke contrary to medical advice and despite his history of cardiovascular problems, which included severe dilated cardiomyopathy.

Finally, the ALJ found plaintiff's credibility was eroded by his historically tenuous connection to the workforce, even before his alleged onset date. The ALJ noted that plaintiff had never worked at a level demonstrating substantial gainful activity within the past 20 years, which suggests that his purported inability to work on a regular and continuing basis is not necessarily attributable to his currently-alleged mental and physical impairments. Evidence of a poor work history suggesting a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff gave no explanation for his prior poor work history, other than his drug use dating back to high school. As such, the ALJ reasonably discredited plaintiff based on his poor work history. *Cf. Myler v. Commissioner Social Security Administration*, 2014 WL 5511326 (D. Or. Oct. 31,

2014) (where plaintiff reported she stopped working in 1994 because she got married and did not need to work, sparse work history did not strongly suggest a lack of propensity to work).

Upon a careful review of the record, the ALJ reasons constitute clear and convincing reasons, supported by substantial evidence to discount plaintiff's testimony.

## II. Treating Physician

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. 416.927(c).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record. 20 C.F.R. § 416.927(d)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Taylor v. Commissioner Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

9 - OPINION AND ORDER -

Plaintiff argues the ALJ failed to provide specific and legitimate reasons for discounting the opinion of treating physician Basil Pittenger, M.D. Plaintiff contends Dr. Pittenger's opinion that plaintiff is unable to work should be credited as true. I disagree.

Dr. Pittenger began treating plaintiff in January of 2012. Tr. 959-962. On January 24, 2012, Dr. Pittenger ordered an echocardiogram that revealed that plaintiff's left ventricular systolic function was "severely reduced," and the left ventricular wall motion was "globally hypokinetic." Tr. 1047. On February 12, 2012, Dr. Pittenger wrote a letter to plaintiff's attorney which stated:

> Jason Wagnon is my patient since January 16, 2012. He has a history of schizoaffective disorder and currently hears voices despite massive doses of psychotropic medications. He also has paroxysmal atrial fibrillation and severe ischemic cardiomyopathy with an ejection fraction of 20 to 25%, as of his last echocardiogram dated January 24, 2012. He suffers from gout and has a thoracic nerve injury causing a chronic winged scapula. He had a heart attack in July of 2002 and had a stent placed in his left anterior descending artery of his heart on July 23, 2002.
>
> In order to treat these medical problems he has a complex medication regimen that results in significant side effects. His medical conditions and the medications used to treat his medical conditions make it impossible for him to work in any capacity.

Tr. 951. On March 4, 2013, Dr. Pittenger stated: "In my opinion, the [plaintiff] is disabled due to his mental health as well as his cardiac issues." Tr. 977.

The ALJ gave little weight to Dr. Pittenger's opinion as to the disabling effect of plaintiff's mental health issues. The ALJ first found that Dr. Pittenger offered an unsubstantiated opinion on a matter that is reserved to the Social Security Commissioner, citing 20 C.F.R. § 416.927(e). Tr. 22. Under 20 C.F.R. § 416.927(e), "a statement by a medical source that [a claimant is] 'disabled' or 'unable to work'" is an opinion on an issue reserved to the Commissioner.

10 - OPINION AND ORDER -

Plaintiff relies on *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) to argue that Dr. Pittenger's opinion was not a conclusory statement, but instead an assessment based on objective medical evidence of plaintiff's likelihood of being able to sustain full time employment given his medical and mental impairments. In *Hill*, however, the Ninth Circuit described the medical source's statement that the claimant would be "unlikely" to work full time as "an assessment, based on objective medical evidence, of claimant's *likelihood* of being able to sustain full time employment give the many medical and mental impairments [the claimant] faces and her inability to afford treatment for those conditions." *Id.* (emphasis in original). Dr. Pittenger's opinion, by contrast, concluded that plaintiff "was disabled" and "unable to work in any capacity," issues reserved for the Commissioner.

Moreover, in *Hill*, the ALJ did not address the medical source in question at all, and the Ninth Circuit held that on remand, the district court was to refer the case back to the ALJ for reconsideration. Here, the ALJ directly addressed Dr. Pittenger's opinion, and discounted the opinion for other specific and legitimate reasons in addition to § 416.927(e).

The ALJ next noted that Dr. Pittenger, who is a board certified specialist in internal medicine, is not qualified to assess the claimant's psychological disorders, and that his opinion as to plaintiff's psychological limitations was inconsistent with the less-severe assessment from examining psychiatrist Charles Reagan, M.D. Tr. 22. Dr. Reagan found plaintiff had no difficulty following instructions and remembering them, and had no difficulty interacting other than some disorganized thought. Tr. 837. Dr. Reagan thought plaintiff's hallucinations were hypnagogic rather than psychosis, as the only time he reported having them was when he was falling asleep. Tr. 836. While Dr. Reagan found plaintiff probably had attention deficit hyperactivity disorder and

11 - OPINION AND ORDER -

probably borderline intellectual functioning, he determined that he could not diagnose plaintiff with anxiety disorder, major depression, or antisocial personality disorder. Tr. 836-37.

The ALJ gave greater weight to Dr. Reagan's opinion than Dr. Pittenger's because Dr. Reagan's opinion pertains to a matter within the psychiatrist's professional experience. Tr. 22. The opinions of a medical specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also* 20 C.F.R. § 416.927(c)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"). The court agrees that this finding constitutes substantial evidence for rejecting Dr. Pittenger's opinion that plaintiff's psychological limitations render him disabled.

Finally, the ALJ gave Dr. Pittenger's disability opinion little weight, because it "appears to adopt uncritically the claimant's subjective report." Tr. 22. "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (citations omitted); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (because record supported ALJ's discounting of claimant's credibility, ALJ "was free to disregard [examining physician's] opinion, which was premised on [claimant's] subjective complaints)". Dr. Pittenger did not conduct any mental or psychological testing; instead, he relied solely on plaintiff's subjective reports to conclude that plaintiff "is disabled due to his mental health as well as his cardiac issues."

In summary, I conclude that the ALJ has provided three specific and legitimate reasons backed by substantial evidence in the record as a whole for discounting Dr. Pittenger's opinion. The ALJ did not err.

## II. <u>Treating Nurse Practitioner</u>

Only physicians and certain other qualified specialists are considered "[a]cceptable medical sources." *Molina*, 674 F.3d at 1111 (alteration in original); *see also* 20 C.F.R. § 416.913(a). Nurse practitioners and therapists are considered "other sources." 20 C.F.R. § 416.913(d). "Other" medical sources may not establish the existence of a medically determinable impairment, but they "can provide evidence about the severity of [a claimant's] impairment[s] and how it affects [the claimant's] ability to work." 20 C.F.R. § 416.913(d). The opinion of an "other source" such as a nurse practitioner is given less weight than the opinion of an acceptable medical source such as a physician. 20 C.F.R. § 416.927; *Gomez v. Chater*, 74 F.3d 967, 970–71 (9th Cir. 1996). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). An ALJ must evaluate opinions from other sources, and may discount such testimony if the ALJ provides germane reasons for doing so. *Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 416.927(c).

The record includes treatment notes from Joanne Rutland, a psychiatric nurse practitioner at the Coos County Mental Health Department who had plaintiff under her care from February 2012. Tr. 968-972, 976. At her initial assessment meeting with plaintiff, Nurse Rutland noted plaintiff's diagnosis of schizoaffective disorder, unspecified; rule out bipolar disorder, not otherwise specified; polysubstance dependence, in remission; and rule out antisocial personal disorder, with a Global Assessment Functioning ("GAF") of 45. Tr. 856. On April 12, 2012, following a further assessment of plaintiff, Nurse Rutland described plaintiff's diagnosis as posttraumatic stress disorder, complex; rule out substance-induced persisting psychosis with hallucinations; amphetamine dependence, in remission; cannabis dependence, in remission; and antisocial

13 - OPINION AND ORDER -

personality disorder, with a GAF of 50. Tr. 860. Nurse Rutland reported the same diagnosis on June 18, 2012, July 27, 2012, and September 21, 2012, each time with a GAF of 52. Tr. 865, 867, 969. On November 26, 2012, she reported the same diagnosis, but a GAF of 55. Tr. 971. Over the course of treatment, numerous adjustments were made to plaintiff's medications to counteract side effects such as weight gain/loss, sleeplessness, fatigue, and psychomotor activity.

On March 14, 2013, Nurse Rutland noted that plaintiff's current diagnosis was "Post Traumatic Stress Disorder, Complex - he has severe PTSD symptoms as well as auditory hallucinations related to the trauma and depression related to the trauma." Tr. 976. She noted that plaintiff "has also been diagnosed with Polysubstance Dependence, in full remission and Anti-Social Personality Disorder." Tr. 976. Nurse Rutland described plaintiff's situation and opined as follows:

> [Plaintiff] continues to take psychiatric medications - Seroquel 800 mg at night and Trihexyphenidyl 5mg 1-2 tabs at night. The Seroquel helps with PTSD symptoms, hallucinations, chronic insomnia, mood liability [sic], agitation, and paranoia. The trihexyphenidyl is to reduce side effects associated with the Seroquel. Without these medications, [plaintiff] decompensates rather quickly. The medications cause significant sedation, which can make functionality in the morning hours quite difficult. I do not believe he is capable now, or in the foreseeable future, of sustaining employment.

Tr. 976.

The ALJ did not address any of Nurse Rutland's chart notes and he did not mention – or provide any reason for rejecting – her opinion. This was clear error. The Commissioner contends the ALJ's failure in not discussing the opinion of Nurse Rutland regarding the side effects of plaintiff's medications was harmless error because there was evidence in the record that acceptable medical sources previously found no side effects with some of the same medications, and because

the ALJ stated in the decision that plaintiff "repeatedly denied any adverse effects from his psychiatric medication." Tr. 20.

The Commissioner's *post hoc* rationalizations are not sufficient to cure the ALJ's error because the ALJ, not the Commissioner, must provide the reasons germane to discrediting each "other source." *Smiggs v. Astrue*, 2011 WL 4544052, *8 (D. Or. Sept. 28, 2011) (citing *Ceguerra v. Sec'ty of Health & Human Ser.*, 933 F.2d 735, 738 (9th Cir. 1991). In addition, the ALJ's error was not harmless because I cannot conclude that "no reasonable ALJ," when fully crediting Nurse Rutland's opinion, "could have reached a different disability determination." *Stout v. Commissioner, Social Security*, 454 F.3d 1050, 1056 (9th Cir. 2006).[2] Because I cannot conclude what effect Nurse Rutland's opinion would have on the ultimate disability determination, I cannot find that the ALJ's failure to address her opinion was harmless error.

## IV.   Step Five Analysis

Because I have identified error in the ALJ's failure to consider Nurse Rutland's opinion, which may impact plaintiff's RFC, the ALJ could not rely upon the VE's testimony. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). I therefore decline to address plaintiff's step five argument.

## V.   Remand

After finding the ALJ erred, this court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.), *cert. denied*,

---

[2]Upon questioning by the plaintiff's attorney, the VE testified at the hearing that if a person needed "a two or three hour nap or something each day during work" that could not be accommodated in the labor market. This limitation would not necessarily be inconsistent with Nurse Rutland's opinion regarding the sedative side effects of plaintiff's medications.

15 - OPINION AND ORDER -

531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Id.* The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Garrison v. Colvin,* 759 F.3d 995, 1020 (9th Cir. 2014). Where, after evaluating the record as a whole, there are serious doubts that the claimant is, in fact, disabled, the court may exercise its discretion and remand the case for further proceedings. *Id.*; *Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir. 2003).

On this record, I conclude that outstanding issues must be resolved before a final determination of disability can be made. The ALJ's error calls into question whether the RFC finding adequately incorporates all of plaintiff's nonexertional limitations. The ALJ must consider Nurse Rutland's opinion. If the ALJ accepts that opinion, the ALJ must determine what effect the opinion has on the RFC, and seek additional VE testimony if necessary. If the ALJ chooses to reject Nurse Rutland's opinion, the ALJ must provide legally sufficient reasons for doing so. Accordingly, I exercise my discretion to remand this case for further administrative proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this 28 day of January, 2016.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

17 - OPINION AND ORDER -